UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LAMAR PITTS, d/b/a
GODALLAH GLOBAL,

    Plaintiff,

v.

NAVY FEDERAL CREDIT UNION
and JOHN COLLINS,

    Defendants.

Case No. 25-cv-11367

Honorable Robert J. White

**ORDER GRANTING PLAINTIFF'S IN FORMA PAUPERIS
APPLICATION AND DISMISSING THE COMPLAINT**

Before the Court is *pro se* Plaintiff Andrew Lamar Pitts's application to proceed *in forma pauperis*. (ECF No. 2). For the following reasons, the Court will (1) grant the application and allow the complaint to be filed without prepayment of the filing fee, and (2) dismiss the complaint for failing state a plausible claim for relief.

Pursuant to 28 U.S.C. § 1915(a)(1), the Court may permit a person to commence a lawsuit without prepaying the filing fee, provided the applicant submits an affidavit demonstrating the inability "to pay such fees or give security therefor." Here, Plaintiff's application has made the required showing of indigence. The Court

therefore grants the application and permits the complaint to be filed without requiring Plaintiff to prepay the filing fee.

*Pro se* complaints are held to "less stringent standards" than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, the Court must dismiss an *in forma pauperis* complaint if it:

>  (i) is frivolous or malicious;
>  (ii) fails to state a claim on which relief may be granted; or
>  (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In other words, a complaint is frivolous if "based on an indisputably meritless legal theory" or "clearly baseless" facts or "a legal interest which clearly does not exist" or "fantastic or delusional scenarios." *Id.* at 327-28.

To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (cleaned up).

Plaintiff filed this action against Defendants Navy Federal Credit Union (Navy Federal) and John Collins, Navy Federal's chief financial officer, asserting claims under 15 U.S.C. § 1692, "UCC Article 9-9-625(b)," and 16 C.F.R. § 433, as

well as for breach of contract and violations of Plaintiff's property and due-process rights. (ECF No. 1, PageID.2-6). Plaintiff specifically alleges as follows:

> Plaintiff . . . is the titleholder, secured party, and named payee of a consumer credit contract originated in his name and secured by his personal collateral and credit. This instrument is a secured obligation, with the corresponding account funded by Plaintiff's credit capacity and signature. [Navy Federal] has misrepresented the nature of this account by falsely designating it as a defaulted debt, reporting it to third parties, and pursuing collection, while refusing to acknowledge Plaintiff's ownership rights and perfected security interest. Under the FTC Holder Rule, 16 C.F.R. § 433.2, Plaintiff is the lawful payee and holder in due course. These acts constitute breach of contract and violations of the membership agreement, which includes fiduciary duties, servicing obligations, and the implied covenant of good faith and fair dealing. [Navy Federal] has also unlawfully restricted or closed Plaintiff's account, misused his collateral, and converted the instrument's benefits. Since October 2023, despite receiving repeated written disputes , [Navy Federal] has acted in bad faith and in violation of: 15 U.S.C. § 1692e(2)(A)—false representation of debt[;] l5 U.S.C. § 1692f(1)—collection of unauthorized amounts[;] 12 C.F.R. §§ 1026.11, 1026.12(c)—unauthorized account restrictions[; and] 16 C.F.R. § 433.2—FTC Holder Rule protections[.] Additionally, [Navy Federal]'s actions have deprived Plaintiff of property without due process, violating the Fifth and Fourteenth Amendments. These actions have obstructed [Plaintiff's] financial freedom and access to lawfully held credit and property.

(ECF No. 1, PageID.5).

In addition to monetary damages, Plaintiff seeks (1) a declaratory judgment "recognizing Plaintiff as the secured party, titleholder, and holder in due course of the subject credit contract and share deposit account, with perfected rights to payment and ownership of related collateral"; (2) "[s]pecific performance requiring [Navy Federal] to: [h]onor all perfected agreements, ownership, and title; [r]emove

3

unlawful encumbrances; [r]eissue card devices; [and p]rovide a full accounting"; (3) injunctive relief to prohibit Navy Federal from furnishing false credit data, misrepresenting Plaintiff's obligations or ownership, or restricting Plaintiff's access to secured financial instruments without due process. (ECF No. 1, PageID.6).

Plaintiff also filed on the docket an affidavit and various documents purportedly supporting his claims. (ECF Nos. 5-6). These records include messages Plaintiff sent to Defendant Collins in November 2023 related to the credit account at issue and stating in relevant part:

> [Plaintiff] hereby accept[s] all title, rights, interest, and guaranteed equity owed to [him]. [Defendants must] apply the principal balance to [Plaintiff's] principal account #5793 as a set-off each billing cycle. Please apply this tender of payment to my account within 5 business days . . . . If I do not receive any communication . . . within 5 business days . . . , I will assume that [these] instructions have been completed. Non-negotiable[.] [sic]

(ECF No. 6, PageID.45-47).

Plaintiff also provides a billing statement to him from Navy Federal showing a minimum payment due on Plaintiff's account, to be paid by November 23, 2023, of $219.03, and a "new balance" of $9,060.10. (ECF No. 6, PageID.33). This document includes handwritten notations stating an "amount enclosed" of $9,060.10 being "accepted for deposit" and "pa[id] to the bearer," and Plaintiff seemingly sent the document to Defendants with a cover page stating, "without recourse." (ECF No. 6, PageID.33-34). Navy federal responded to Plaintiff in December 2023, stating:

4

> We are in receipt for the documentation you submitted regarding your [account].
>
> The documents provided do not release you from your obligation to Navy Federal, and you remain responsible for repayment of your debt(s).
>
> We may report information about your account(s) to the credit bureaus. Late payments, missed payments, or other defaults on your account(s) my be reflected in your credit report.

(ECF No. 6, PageID.32).

Further, Plaintiff provides a 2025 financing statement listing him as both the debtor and the secured party with respect to some unidentified "UCC Lien." (ECF No. 6, PageID.48-53; *see also* ECF No. 5).

According to Plaintiff's affidavit, he—as shown by his communications with Defendants—offered tender under Mich. Comp. Laws § 440.3603 and UCC § 3-603 "for offset and settlement" of his account, and Defendants' failure to respond within 5 business days "discharge[d] the obligation to the extent of the tender." (ECF No. 6, PageID.15-29). Plaintiff also avers that he is listed as the secured party on his attached financing statement, and that he "maintain[s] a perfected security interest in the applicable obligation and equity property, valued at $250,000." (ECF No. 6, PageID.15-29).

5

As an initial matter, UCC § 3-603, adopted Mich. Comp. Laws § 440.3603,[1] provides, in relevant part: "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates."

However, even accepting that Plaintiff sufficiently tendered payment via his communications with Defendants, Plaintiff's consumer credit account at issue here is not a commercial transaction governed by the UCC. *See Calhoun County Treasurer v. Swafford*, No. 293272, 2010 Mich. App. LEXIS 2174, at *8 (Mich. App. Nov. 16, 2010) (questioning applicability of Mich. Comp. Laws § 440.3603(2) where the court was "not convinced that the issuance of a summer property tax bill constitute[d] a commercial transaction" subject to the UCC). And Plaintiff's consumer credit account, which presumably involves an open-ended or revolving credit plan, is not a negotiable instrument subject to tender and discharge. *See id.* (summer property tax bill not an instrument); Mich. Comp. Laws § 440.3104(1) (negotiable instrument requires, among other things, "an unconditional promise or

---

[1] To the extent Plaintiff's complaint also cites "UCC Article 9-9-625(b)," no such provision exists. Indeed, Article 9 of the UCC has only eight parts.

order to pay a fixed amount of money, with or without interest or other charges described in the promise or order"); UCC § 3-104 (same).

It also is unclear to the Court how Plaintiff's financing statement supports any cause of action. *See Smith v. Nationstar Mortg., LLC*, No. 09-14572, 2010 U.S. Dist. LEXIS 117201, at *4 (E.D. Mich. Nov. 3, 2010) ("A UCC financing statement is merely a record filed to give notice of a secured party's interest in the property of a debtor."). The statement here was not registered until 2025, two years after Plaintiff allegedly discharged his obligations, it does not identify any property, and—most critically—it does not even list either defendant as a debtor. And although Plaintiff avers that "the applicable obligation and equity property" is valued at $250,000 (ECF No. 6, PageID.23), it remains unclear factually how this amount was derived or is even related to Plaintiff's consumer credit obligation.

Moreover, courts have routinely rejected claims that a debt was discharged by similar unilateral action. *See, e.g., id.* (under similar circumstances to those here, "the Court [wa]s unable to discern how the financing statement support[ed] a cause of action"); *Reid v. RRA CP Opportunity Trust 1*, No. 24-1752, 2025 U.S. Dist. LEXIS 94285, *13 (C.D. Cal. May 15, 2025) (rejecting the plaintiff's argument that "letters" he sent to the defendant were "legal instruments that have the effect of discharging his debt"); *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 755-60 (W.D. Va. 2007), *aff'd* 282 F. App'x 260 (4th Cir. 2008) (rejecting argument that

7

the plaintiff's "Bill of Exchange" sufficed as tender to discharge her mortgage obligation).

With that said, the Court concludes that Plaintiff cannot establish, either factually or legally, that his debt to Navy Federal was ever discharged in any way. Accordingly—since all Plaintiff's causes of action depend entirely on Navy Federal "ha[ving] misrepresented the nature of [Plaintiff's] account by falsely designating it as a defaulted debt, reporting it to third parties, and pursuing collection, while refusing to acknowledge Plaintiff's ownership rights and perfected security interest" (ECF No. 1, PageID.5)—Plaintiff fails to state a claim under any of his purported legal theories.

\* \* \*

For the reasons given, the Court ORDERS that the Plaintiff's application for leave to proceed *in forma pauperis* (ECF No. 2) is GRANTED. The Court accepts the filed complaint and will not require prepayment of the filing fee.

The Court further ORDERS that the complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

The Court further ORDERS that Plaintiff may not file an appeal *in forma pauperis* because it would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

Dated: June 12, 2025           s/Robert J. White
                               Robert J. White
                               United States District Judge